# Commonwealth v. duPont

*William Toal III,* for Commonwealth.
*George Bochetto,* for defendant.

JENKINS, *J.,* May 19, 2010—On January 26, 1996, duPont murdered Olympic wrestler and gold medalist Dave Schultz at duPont's 800-acre estate in Delaware County. A jury convicted him of third-degree murder, and he was sentenced to 13-30 years imprisonment. Thereafter, duPont has enlisted one squadron of attorneys after another to seek relief for him in every conceivable judicial arena1—all to no avail. His latest foray into this court was a petition for transfer outside prison walls to undergo medical tests to determine whether he should be transferred to a hospital, long-term nursing facility or hospice under 61 P.S. §81 (recodified at 42 Pa.C.S. §9777). The court denied his petition, and for the reasons provided below, this order should be affirmed.

---

1. For direct appeal proceedings, see *Commonwealth v. duPont,* 730 A.2d 970 (Pa. Super. 1999), *reargument denied,* June 29, 1999, *allocatur denied,* 561 Pa. 669, 749 A.2d 466 (2000), *cert. denied,* 530 U.S. 1231, 120 S.Ct. 2663, 147 L.Ed.2d 276 (2000). For PCRA proceedings, see *Commonwealth v. duPont,* 860 A.2d 525 (Pa. Super. 2004) (affirming this court's lengthy opinion denying PCRA relief without a hearing), *reargument denied* (November 19, 2004), *allocatur denied,* 585 Pa. 695, 889 A.2d 87 (2005), *cert. denied,* 547 U.S. 1129, 126 S.Ct. 2029, 164 L.Ed.2d 782 (2006). For habeas corpus proceedings see *duPont v. Stowitzky,* 2008 WL 4283356 (E.D. Pa. 2008) (denying relief on basis of report and recommendation of United States Magistrate Judge Caracappa), *certificate of appealability granted,* no. 08-4305 (3d Cir. 6/16/09).

Under specific circumstances, a sentencing court may permit a prisoner's temporary transfer to a hospital, long-term care nursing facility or hospice care location. See 42 Pa.C.S. §9777. To obtain a transfer, the prisoner must prove, inter alia, that he is "seriously ill and is expected, by a treating physician, to not live for more than one year." 42 P.S. §9777(a)(1)(iii).

In 2009, duPont filed a petition in this court "for allowance of medical examinations to explore a motion to modify sentence for medical reasons." He failed to allege that a "treating physician" found that he is seriously ill and that his life expectancy is at most one year. Instead, the petition stated that *his counsel* believes his health is in danger based on counsel's visits with duPont and "consultation with physicians and medical experts." Petition, p. 3, ¶7; see also, petition, p. 4, ¶9 (referring to counsel's "research and consultation with medical experts"). Moreover, the petition states that duPont intends to undergo tests to determine whether his maladies qualify as "serious illness." Petition. p. 13, ¶52.

In response, the Commonwealth furnished affidavits of a prison physician and prison dentist averring that duPont is not seriously ill and is not expected to die within one year. Commonwealth's answer to petition, exhibits A, B. The physician and dentist continued that duPont suffers from no medical or dental problems "that cannot be fully and appropriately treated by the department [of corrections]." *Id.*

The court denied duPont's petition, without a hearing, reasoning:

"Section 81 [now section 9777] permits the prisoner to petition the sentencing court to 'temporarily defer service of the sentence of confinement and temporarily

remove the prisoner ... for placement in a hospital, long-term nursing facility or hospice care location' if the prisoner satisfies seven conditions enunciated in the statute. One such condition is that the prisoner is 'seriously ill and is expected, by a treating physician, to not live for more than one year' (the medical condition). 61 P.S. §81(a)(1)(iii). According to defendant's motion, a treating physician has not actually found that he satisfies the medical condition. Instead, defendant's motion requests medical examinations *outside prison walls* to determine whether he meets the medical condition. Section 81 does not provide for discovery outside prison walls to determine whether the defendant can satisfy the medical condition. The defendant cannot obtain relief under section 81 unless the prison physician (the 'treating physician' under section 81) determines after an examination inside prison walls that the defendant satisfies the medical condition." Order dated October 27, 2009.

duPont subsequently filed a timely notice of appeal and timely statement of matters complained of on appeal.

duPont argues on appeal that the court erred in

"(1) concluding that only the prison physician can be considered the 'treating physician' under section 9777;

"(2) denying a hearing in which his attorneys could cross-examine the prison physicians who attached affidavits to the Commonwealth's response;

"(3) accepting said affidavits without permitting him to present alternate opinions from non-prison physicians;

"(4) applying section 9777's standards, which only apply to transfers, not to his request for a mere medical examination;

"(5) denying him due process by precluding 'the opportunity of confrontation';

"(6) finding that he did not meet his prima facie burden in his petition."

None of these arguments pass muster under section 9777.

Section 9777 prescribes in relevant part:

"*(a) Inmates committed to custody of department.*—If an inmate is committed to the custody of the department, the department, the inmate or a person to whom the court grants standing to act on behalf of the inmate may petition the sentencing court to temporarily defer service of the sentence of confinement and temporarily remove the inmate committed to the custody of the department, or other facility, for placement in a hospital, long-term care nursing facility or hospice care location. The following shall apply:

"(1) The sentencing court may, approve the petitioner's request to temporarily defer service of the sentence of confinement and place the inmate in a hospital or long-term care nursing facility under electronic monitoring by the department upon clear and convincing proof that all of the following apply:

"(i) The medical needs of the inmate can be more appropriately addressed in the hospital or long-term care nursing facility.

"(ii) The hospital or long-term care nursing facility requested by the petitioner has agreed to accept the place-

ment of the inmate and to provide necessary medical care.

*"(iii) The inmate is seriously ill and is expected by a treating physician to not live for more than one year.*

"(iv) There are not writs filed or detainers lodged against the inmate and the inmate is not subject to any court order requiring the inmate's presence.

"(v) The placement in the hospital or long-term care nursing facility does not pose undue risk of escape or danger to the community. In making this determination, the sentencing court shall consider the inmate's institutional conduct record, whether the inmate was ever convicted of a crime of violence, the length of time that the inmate has been imprisoned and any other factors the sentencing court deems relevant.

"(vi) The hospital or long-term care nursing facility has agreed to notify the department and the court of any material changes in health status of the inmate, the nature of the care provided or other information required by the department.

"(vii) Each agency representing the Commonwealth at a proceeding which resulted in an order committing or detaining the inmate, the state or local correctional facility housing the inmate and any registered crime victim have been given notice and an opportunity to be heard on the petition." (emphasis added)

In light of the italicized language, duPont's first argument on appeal—physicians other than prison doctors can be "treating physicians"—misses the point. Even if "treating physicians" can come from outside prison walls,

no treating physician has averred that duPont is seriously ill or has a life expectancy of at most one year.[2] duPont's petiton merely asserts that counsel believed duPont was seriously ill based on counsel's observations during prison visits and counsel's "consultations" with physicians who did not personally examine or treat duPont. This does not meet section 9777's requirement that a physician find duPont in failing health after treating duPont himself.

duPont's second and fifth arguments—the denial of his right to cross-examine the prison physician and dentist who submitted affidavits in the Commonwealth's response and the denial of his right of "confrontation"— can be addressed together. duPont might have enjoyed a right to a hearing and the right to confront the Commonwealth's medical witnesses had his petition alleged prima facie evidence that met all of section 9777's criteria. The petition, however, fails to allege that a treating physician found duPont seriously ill with a life expectancy of at most one year. Counsel's claim that he saw duPont himself and consulted with experts outside prison does not fulfill section 9777's "treating physician" requirement. Because his petition failed to allege prima facie evidence warranting relief under section 9777, duPont has no right to a section 9777 hearing and no right to cross-examine/ confront the prison officials.

duPont states in his third argument that the court improperly accepted the affidavits of the prison officials without permitting him to present alternate opinions from

---

2. The court will also refer to these criteria collectively as requiring proof that the prisoner is "in failing health."

non-prison physicians. This is misleading. duPont had, and continues to have, the right to submit written opinions from non-prison physicians that he is in failing health. If a non-prison physician avers that he finds duPont in failing health after treating duPont himself, the court will further consider whether a section 9777 hearing is warranted. But in the absence of such documentation, the court will not take further action under section 9777.

In his fourth argument, duPont contends that section 9777 only applies to petitions for transfers to other medical facilities, not to his request for a mere medical examination outside prison walls. He is absolutely right: there is *no* law that permits prisoners such as duPont to undergo medical examination outside prison to determine whether they qualify for a transfer. In the absence of such a law, duPont cannot obtain a transfer unless (a) a physician treats him inside prison and concludes that he is in failing health, and (b) he satisfies all other requirements within section 9777.

Finally, duPont's sixth argument that his petition states a prima facie claim for relief fails for the reasons given above, to wit, his failure to submit a treating physician's affidavit that he is in failing health.

For these reasons, the court recommends that its order denying duPont's petition be affirmed.